**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TEAMSTERS LOCAL 639—EMPLOYERS HEALTH TRUST FUND** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **JEROME COUPLIN**, <br><br> Defendant. | Case No. 25-cv-1835 (CRC) |

**<u>OPINION</u>**

Teamsters Local 639 operates an employee benefit plan for its members.  In 2020, the plan paid medical benefits to union member Jerome Couplin following a car accident.  Mr. Couplin later received worker's compensation settlement payments for the same accident.  The plan rules required Couplin to reimburse the fund.  He did not do so.  So the plan and its trustees filed this lawsuit against him under the Employee Retirement Income Security Act ("ERISA").  Despite having been properly served, Couplin has not responded to the complaint, the Clerk's entry of default, or the Court's order to show cause why judgment should not be entered against him.  Plaintiffs request a default judgment, reimbursement of paid benefits plus interest, and attorneys' fees and costs.  Because Plaintiffs have established that Couplin is liable and that they are entitled to their requested relief, the Court will grant their motion and enter judgment against Couplin.

## I.    Background

### A.  Factual Background

Teamsters Local 639—Employers Health Trust Fund ("Fund") is an employee benefit plan and multiemployer plan under ERISA, 29 U.S.C. § 1002 *et seq.*  In May 2020, Jerome

Couplin, a member of Teamsters Local 639, suffered an injury to his neck and lower back during a car accident arising out of his employment with United Parcel Service.  Compl. ¶¶ 15–16; see also Compl., Ex. 2 at 4.  Mr. Couplin received medical care stemming from the accident over the next few years, and the Fund covered associated costs to the tune of $11,350.54.  Compl. ¶ 17.  Additionally, Couplin applied for and received $12,005.42 in accident and sickness benefits from the Fund.  Id. ¶ 18.

The rules governing the Fund ("Reimbursement Rules" or "Rules") explain that when a member or their dependent experiences a qualifying injury or illness on the job, the plan will provide a member with covered benefits.  Id. ¶ 10.  However, the plan "must be repaid from any recovery related to the [i]njury or [i]llness" that the injured party "may receive, whether through settlement, judgment, worker's compensation or any other insurance or benefits program."  Id.

In September 2021, Couplin and his attorney executed a Reimbursement and Subrogation Agreement ("Reimbursement Agreement" or "Agreement").  Id. ¶ 19.  Consistent with the Reimbursement Rules, the Agreement provided that if either party "recover[ed] money from a third party who is or may be liable for" the injury, "including an insurance company or a worker's compensation carrier," the party was to "hold the money in constructive trust for repayment to the Fund" and "promptly repay the Fund . . . for the benefits advanced by the Fund, up to the amount of the recovery."  Id. ¶ 11.  Also consistent with the Rules, the Agreement provided that the Fund would have an equitable lien upon any recovery received by the plan participant or attorney.  Id. ¶ 12; see also id. ¶ 10.  This "obligation to repay the Fund" would have "priority over other obligations."  Id. ¶ 13; see also id. ¶ 10.

According to the complaint, a few years after his accident, Couplin reached a settlement with his employer and the worker's compensation claim administrator.  The settlement entailed a

2

lump-sum award of $336,713.87 and a medical set-aside of $38,578.37, the latter of which would be paid out via an initial lump sum of $2,967.41 and an annuity payment of $1,424.36 per year for 25 years as long as Couplin lived.  Id. ¶¶ 22–23.

In May and October of 2024, the Fund sent letters to Couplin at an address in Upper Marlboro, Maryland, demanding repayment in accordance with the Reimbursement Rules and Agreement, which Couplin and his attorney had executed years earlier.  Id. ¶¶ 24–25.  Couplin never responded to the first letter, and the second was returned as undeliverable.  Id. ¶¶ 24, 26. The Fund tried again in early 2025, sending a similar letter to Couplin at a new address in Sunderland, Maryland; Couplin again failed to respond.  Id. ¶ 27.

B.  Procedural History

The Fund filed this lawsuit in June 2025, seeking to enforce the terms of the employee benefit plan and recover damages, interest, and attorneys' fees and costs under 29 U.S.C. § 1132(a)(3).  In September, the Court entered a minute order to show cause why the case should not be dismissed for lack of service, as the Fund had not filed proof of service on the docket.  See Sep. 30, 2025 Min. Order.  The Fund responded shortly thereafter, explaining that its process server was unable to effect service at Couplin's home address due to "aggressive dogs on the premises, which posed a safety risk."  See Resp. to Order to Show Cause at 2.  It then filed a motion requesting to effect service by posting or publication.  See Mot. for Serv. by Posting or Publ'n ("Mot. for Alt. Serv.") at 3.

The Court granted the Fund's request in part, authorizing service by first-class mail and by posting the summons and complaint at Couplin's last known residence.  See Oct. 17, 2025 Min. Order; Oct. 20, 2025 Min. Order.  The Fund filed proof of service in the authorized manner. A few weeks later, upon the Fund's request, the Clerk entered default against Couplin.  The Fund

followed up with a motion for default judgment.  Last month, the Court entered a minute order directing Couplin to show cause why judgment should not be entered for the Fund.  See June 26, 2026 Min. Order.  He did not respond.

## II.    Legal Standard

Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party."  Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (cleaned up).  Obtaining default judgment is a two-step process.  See Boland v. Cacper Const. Corp., 130 F. Supp. 3d 379, 382 (D.D.C. 2015).  First, a plaintiff must request that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend" against the action.  Fed. R. Civ. P. 55(a).  Then, the plaintiff "must apply to the court for a default judgment."  Fed. R. Civ. P 55(b)(2).

"Whether default judgment is appropriate is in the discretion of the trial court."  Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Vistacare LLC, 819 F. Supp. 3d 1, 10 (D.D.C. 2026) (citations omitted).  "Upon entry of default by the clerk, the defaulting defendant is deemed to admit every well-pleaded allegation in the complaint."  Id. (cleaned up).  "[A] notation of default against a defendant does not automatically entitle a plaintiff to a default judgment"; instead, taking the plaintiff's well-pleaded allegations as true, the court must evaluate whether the complaint states a valid claim for relief.  United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd., 324 F. Supp. 3d 38, 45 (D.D.C. 2018).  At the same time, when the defendant does not "respond to either the complaint or the motion for default judgment" and thereby "fail[s] to contest its liability in th[e] suit," the Court "need only determine whether the allegations in the complaint are well-pled" and state a claim.  Bricklayers

4

& Trowel Trades Int'l Pension Fund v. Civitillo Masonry, Inc., No. 23-cv-2598 (JMC), 2025 WL 358757, at *2 (D.D.C. Jan. 31, 2025).

### III. Analysis

#### A. Jurisdiction

The Court has subject matter jurisdiction over this matter pursuant to 29 U.S.C. § 1132(e) and (f) and 28 U.S.C. § 1331. Couplin has not appeared to challenge the Court's personal jurisdiction over him, and courts "generally ha[ve] no obligation to raise a question of personal jurisdiction on [their] own." See Kaplan v. Cent. Bank of the Islamic Republic of Iran, 896 F.3d 501, 511 (D.C. Cir. 2018). The Court in any case confirms that it has personal jurisdiction over Couplin pursuant to 29 U.S.C. § 1132(e)(2) and Fed. R. Civ. P. 4(k)(1)(C). Because of the minor hiccup in service in this case, the Court takes a moment to confirm that service was proper.

An individual can be served by "following state law . . . in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Here, then, District of Columbia and Maryland law are the relevant jurisdictions, and the procedural laws of both authorize alternative means of service if the plaintiff demonstrates an inability to accomplish service by an ordinary method after good-faith efforts. See D.C. Super. Ct. R. Civ. P. 4(e)(3); Md. R. 2-121(c). The Fund documented diligent, good-faith efforts to effect service. See Mot. for Alt. Serv. at 1–2; Aff. of Lori R. Waichman, ECF No. 4-1. The Fund's process server made seven unsuccessful attempts to serve Couplin personally at his last known address in Sunderland, Maryland. Five were thwarted by aggressive dogs on the property. On two occasions when the process server was able to reach the front door, no one answered. See Mot. for Alt. Serv. at 2. The Fund also twice attempted to serve Couplin by certified mail, but the service packages were returned as undeliverable each time. Id.

The Court therefore authorized the Fund to effect service on Couplin by posting the summons and complaint at his last known residence and mailing copies of the same by first-class mail.  See Oct. 17, 2025 Min. Order; Oct. 20, 2025 Min. Order.  The Court finds that service in this manner was reasonably calculated to give actual notice of the action to Couplin, consistent with D.C. and Maryland's procedural rules.  See D.C. Super. Ct. R. Civ. P. 4(e)(3); Md. R. 2-121(c); see also Sanchez v. Yu Lin Corp., No. 21-cv-2119 (TSC), 2022 WL 4598653, at *4 (D.D.C. Sept. 30, 2022) (finding service by USPS priority mail at defendant's residence and home addresses to be an appropriate alternative means of service reasonably calculated to give actual notice to the served party).  On October 22, 2025, the Fund's process server posted the documents to the mailbox at Couplin's address in Sunderland, Maryland, and mailed the documents to him by first-class mail three days later.  Under the circumstances, the Fund properly effected service of process on Couplin.

B.  Liability

Because the Clerk of the Court has entered default, the Court accepts the Fund's well-pleaded allegations as true.  See Elite Terrazzo Flooring, 763 F. Supp. 2d at 67.  In reviewing those allegations, it concludes that they are sufficient to make out the asserted ERISA claim and, in this default judgment posture, render Couplin liable to the Fund.  Cf. Teamsters Loc. 639-Emps. Health Tr. v. Davis, 736 F. Supp. 2d 168, 171 (D.D.C. 2010) (explaining that the standard for default judgment is satisfied where there is no suggestion by the defendant of a meritorious defense and the allegations in the complaint are legally sufficient to make out a claim).

ERISA empowers plaintiffs to bring a civil action to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or

the terms of the plan." 29 U.S.C. § 1132(a)(3).  As the Fund pleads in its complaint and substantiates with relevant documentation, the terms of the employee benefit plan in which Couplin participated—and the Agreement he signed in 2021 which implements those terms— obligated him to reimburse the Fund for his accident-related benefits once he obtained recovery through a third-party worker's compensation settlement.  By failing to reimburse the Fund, Couplin violated both the Reimbursement Rules and the Agreement he executed.  The Fund was harmed by these violations, and, pursuant to 29 U.S.C. § 1132(a)(3), is entitled to appropriate relief to redress them.  In short, the Fund has established that Couplin is liable, so entry of default judgment is warranted.

    C.  <u>Relief</u>

The Fund seeks default judgment against Couplin in the amount of $23,355.96 for paid medical care and accident and sickness benefits, plus 10 percent annual interest on the benefits paid.  Mot. for Default J. at 9.  In support of its requested judgment, the Fund offers a declaration by Valencia Stewart, who serves as Subrogation Supervisor for the Fund and, in this role, manages the subrogation liens held by the fund and maintains custody and control over the Fund's records.  Mot. for Default J., Decl. of Valencia Stewart ("Stewart Decl.") ¶ 1.  Ms. Stewart's declaration is similar to those accepted by courts in this district to support motions for default judgment.  <u>See, e.g.</u>, <u>Teamsters Loc. 639-Emps. Health Tr. v. Hodges</u>, No. 11-cv-1242 (ESH), 2011 WL 6176218, at *1 (D.D.C. Dec. 12, 2011); <u>see also</u> <u>Bricklayers & Trowel Trades Int'l Pension Fund v. Barron</u>, 317 F. Supp. 3d 157, 161 (D.D.C. 2018).

Ms. Stewart's declaration confirms that the Fund covered Couplin's accident-related medical care in the amount of $11,350.54 and provided $12,005.42 in accident and sickness benefits.  Stewart Decl. ¶¶ 11–12.  It additionally confirms that Couplin executed the

Reimbursement Agreement, in which he agreed to repay the Fund for the advanced benefits if he recovered any money from a third party. Id. ¶ 13; see also Stewart Decl., Ex. 2 at 1. And the declaration avers that Couplin reached a settlement agreement with his employer and worker's compensation claim administrator but neglected to reimburse the Fund as required. Stewart Decl. ¶¶ 16. The Fund has thus proven it is entitled to a judgment in the amount of $23,355.96.

The Fund also requests 10 percent annual interest on the unpaid reimbursement sum, which is provided for by the Reimbursement Rules and Agreement. See Mot. for Default J. at 9; see also Stewart Decl., Ex. 1 at 14 ("If the Plan prevails in a lawsuit to enforce its Reimbursement and Subrogation Agreement and/or these rules, the Plan shall be entitled to recover benefits paid . . . together with interest at 10% per annum[.]"); Stewart Decl., Ex. 2 at 2 ("[T]he Fund shall be entitled to recover monies due pursuant to this Agreement, as well as interest at the rate of 10% per annum."). Courts have routinely awarded interest according to rates provided under agreements entered into by employees in similar circumstances. See, e.g., Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Lib. House Nurs'g Home of Jersey City, 232 F. Supp. 3d 69, 76 (D.D.C. 2017) (awarding 10 percent annual interest as mandated by the parties' agreements); Boland v. Hetrick, 277 F. Supp. 3d 112, 119 (D.D.C. 2017) (awarding 15 percent annual interest because it was provided for in the parties' agreement).

The Court will thus additionally grant the Fund interest of 10 percent per annum, as that relief is provided for in the terms of the plan. According to Plaintiffs' Notice of Amounts Due, as of August 5, 2026, Couplin owes $6,212.69, which is 26.6 percent of the unreimbursed

benefits.[1]  See ECF No. 10 ¶ 2.  In sum, the Court concludes that Couplin owes the fund

$23,255.96 in unreimbursed benefits plus $6,212.69 in interest.

    D.  Attorneys' Fees and Costs

Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs

of action to either party."  29 U.S.C. § 1132(g)(1).  The Fund requests fees under this provision

and provides a declaration from Lori Waichman in support of its request.  See Mot. for Default J.

at 9; see also Mot. for Default J., Decl. of Lori Waichman ("Waichman Decl.").  Waichman is a

shareholder and associate at the firm Mooney, Green, Saindon, Murphy & Welch, P.C.

("Mooney Green").  See Waichman Decl. ¶¶ 1, 6.  She avers that she supervised the paralegal

and law clerk who worked on this matter and has personal knowledge of the facts.  Id. ¶ 1.  She

further attests that the collection of delinquent contributions from participant employers like

Couplin represents a "regular part of the firm's practice" and that the rates charged by Mooney

Green in this case are "reasonable and below market rates for firms of Mooney Green's

experience and expertise."  Id. ¶¶ 4–5.  Waichman tallies a total of $8,536.82 in attorneys' fees

and costs for this case.  Id. ¶ 11.  This figure is the sum of 16.8 hours of professional services

rendered by Mooney Green associates at a rate of $336 per hour, 7.6 hours of paralegal work at

$183 per hour, 7.1 hours of work by law clerks at $100 per hour, $405 in filing fees, and $386.82

for the process server.  Id.

Waichman's declaration constitutes the type of "detailed . . . documentary evidence" on

which the Court may rely.  See Serv. Emps. Int'l Union Nat'l Pension Fund v. Bayville

---

[1] Couplin reached a settlement with his employer and his employer's workers' compensation carrier on December 7, 2023, which is when his reimbursement liability accrued. ECF No. 10 ¶ 2.  Two years and eight months (2.66 years) elapsed between that date and August 5, 2026.  At a rate of 10 percent per annum, Couplin thus owes 26.6 percent of his total unreimbursed benefits in interest.

9

Healthcare, LLC, No. 19-cv-833 (CRC), 2019 WL 7066799, at *5 (D.D.C. Dec. 23, 2019) (quoting Fanning v. Permanent Sol. Indus., Inc., 257 F.R.D. 4, 7 (D.D.C. 2009)).  Further, these rates are below market rates approved by courts on similar matters.  See Boland v. Smith & Rogers Constr. Ltd., 201 F. Supp. 3d 144, 149 (D.D.C. 2016) (approving attorney billing rates of $590 and $615 per hour); I.A.M. Nat'l Pension Fund v. KM Ent. Consultants, No. 25-cv-146 (SLS), 2025 WL 3187275, at * 4 (D.D.C. Nov. 14, 2025) (approving rates of $538 per hour); Flynn v. Pulaski Const. Co., No. 02-cv-2336 (DCP), 2006 WL 3755218, at *2 (D.D.C. Dec. 19, 2006) (noting that "in this circuit, the court awards market rate attorneys' fees").  The court fees are likewise reasonable when compared to fees previously approved by this Court.  See Serv. Emps. Int'l Union Nat'l Pension Fund, 2019 WL 7066799, at *5.  Accordingly, the Court concludes the litigation costs expended in this case are reasonable, and the Fund is therefore entitled to $8,536.82 in attorneys' fees and court costs.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Default Judgment. A separate Order shall accompany this Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  August 6, 2026

10